**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

Eastern District of Kentucky
FILED

NOV 2 6 2018

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES OF AMERICA**

V.                                              Mag. No. 0:18-MJ-54-EBA

**BENIAMIN-FILIP OLOGEANU**
   **a.k.a. BENI**
   **a.k.a. JOHNLA73**
   **a.k.a. MARIAN BRADISTEANU**

## AFFIDAVIT IN SUPPORT OF REQUEST FOR EXTRADITION OF BENIAMIN-FILIP OLOGEANU

I, Kathryn M. Anderson, being duly sworn, depose and state:

1. I am an Assistant United States Attorney for the Eastern District of Kentucky. I have been a federal prosecutor since July of 2014. Prior to that, I served as a clerk for United States District Judge John G. Heyburn II of the United States District Court for the Western District of Kentucky from 2012 to 2013, and as a clerk for United States Court of Appeals Judge Eugene E. Siler of the United States Court of Appeals for the Sixth Circuit from 2013 until 2014. I received my Juris Doctor from the University of Kentucky College of Law in Lexington, Kentucky, and I have been licensed to practice law since 2012. As an Assistant United States Attorney, I am an officer of the United States, and it is my responsibility to prosecute violations of federal criminal law. I have received training in criminal procedure, evidence, criminal law, and constitutional law. I have personally represented the United States in cases against numerous defendants charged with violations of federal criminal laws.

2. This affidavit is submitted in support of a request by the United States for the extradition of BENIAMIN-FILIP OLOGEANU.

3. In the course of my duties as an Assistant United States Attorney, I have become familiar with the evidence and the charges against BENIAMIN-FILIP OLOGEANU. This affidavit does not detail all of the evidence against OLOGEANU that is known to me, but only the evidence necessary to establish a basis for the extradition request.

## PROCEDURAL HISTORY AND CHARGES AGAINST OLOGEANU

4. On November 19, 2018, the Honorable Edward B. Atkins, United States Magistrate Judge for the Eastern District of Kentucky, who is legally authorized to review criminal complaints, reviewed and approved Complaint No. 0:18-MJ-54-EBA ("the Complaint"), which contained three criminal charges against OLOGEANU. A criminal complaint is a formal charging instrument filed by the United States prosecutor that presents to the United States Magistrate Judge the factual basis believing that a defendant committed the charged offenses. A United States Magistrate Judge then reviews the complaint and makes an independent decision as to whether the facts specified in the complaint provides enough evidence that would allow a reasonable person to believe that the defendant committed the charged offenses. A copy of Complaint No. 0:18-MJ-54-EBA, certified to be true and accurate by the Clerk of the Court, is attached as Exhibit A.

5. Following the filing of the Complaint, Magistrate Judge Atkins, who is legally authorized to issue arrest warrants on a complaint, issued a warrant for the arrest of OLOGEANU for the offenses charged in the Complaint. A certified true and accurate copy of the arrest warrant is attached as Exhibit B.

6. Each count of the Complaint charges OLOGEANU with conspiracy to violate a criminal law of the United States. Under United States law, a conspiracy is simply an agreement

between two or more people to violate a criminal statute. In other words, the act of agreeing with another person to violate United States law is a crime in and of itself. Such an agreement need not be formal, and may be simply an understanding between the parties. A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged co-conspirators. So, if a defendant has an understanding of the unlawful nature of a plan and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict him for conspiracy even if he had not participated before and even if he played only a minor part. This definition of conspiracy applies to all three charges in the Complaint.

7.   The conspiracy statute that governs the first charge in the Complaint against OLOGEANU is Title 18, United States Code, Section 1962(d), which is conspiracy to commit a Racketeer Influenced and Corrupt Organization ("RICO") offense. The United States Congress enacted RICO crimes as part of the Organized Crime Control Act of 1970 to criminalize the activities of organized crime groups, which commit certain specified state and federal crimes, called "predicate offenses." Simply speaking, and relevant to this case, RICO violations condemn any person who (a) conspires to invest in, acquires or maintains an interest in, or conducts or participates in the affairs of an enterprise, (b) which engages in or whose activities affect interstate or foreign commerce (c) through the patterned commission of predicate offenses. The predicate offenses the RICO enterprise committed or caused to be committed are (1) knowingly executing a scheme to defraud using some kind of wire transmission or mailing across the states of the United States or countries, in violation of 18 U.S.C. §§ 1341 and 1343, (2) committing certain specified unlawful activities (like mail and wire fraud) and then laundering the proceeds of the crime in violation of 18 U.S.C. § 1956, (3) transferring, possessing, or using, without lawful authority, a

means of identification of another person, with the intent to commit or in connection with any unlawful activity that constitutes a violation of federal law, or trafficking in means of identification in violation of 18 U.S.C. § 1028, and (4) trafficking in services, namely internet commerce services, while knowingly using in connection with such services counterfeit marks that were substantially undistinguishable from genuine marks in use and registered for those services on the principal register of the United States Patent and Trademark Office, in violation of 18 U.S.C. § 2320.

8. Violations of the RICO statute are punishable by imprisonment for not more than 20 years, or a fine of not more than the greater of twice the amount of gain or loss associated with the offense or $250,000.

9. The conspiracy statute that governs the second charge in the Complaint against OLOGEANU is Title 18, United States Code, Section 1349, conspiracy to commit wire fraud. For OLOGEANU to have violated § 1349 in this case, OLOGEANU must have agreed with another to engage in wire communications along interstate or foreign lines with the intent to commit fraud, and OLOGEANU must have knowingly and willfully joined in that agreement.

10. The conspiracy statute that governs the third charge in the Complaint against OLOGEANU is Title 18, United States Code, Section 1956(h), conspiracy to commit money laundering. OLOGEANU could have committed this offense in any of four ways. For OLOGEANU to have committed conspiracy to violate § 1956(a)(1) in this case, OLOGEANU must have agreed with another to conduct or attempt to conduct a financial transaction involving the proceeds of mail and wire fraud, which he knew were proceeds of some form of unlawful activity, (1) with the intent to promote the carrying on of the mail and wire fraud schemes or (2) for the purpose of concealing or disguising the nature, location, source, ownership, or control of

4

the proceeds of the mail and wire fraud schemes. For OLOGEANU to have committed conspiracy to violate § 1956(a)(2) in this case, OLOGEANU must have agreed with another to transfer or attempt to transfer funds that he knew to be proceeds of some form of unlawful activity, from a place inside the United States to or through a place outside the United States, with the intent to (1) promote the carrying on of the mail and wire fraud schemes, or (2) conceal or disguise the nature, source, ownership, or control of the proceeds of the mail and wire fraud schemes. Under United States law, it is enough to have caused these transfers to take place.

11. The criminal penalty for a violation of the wire fraud and money laundering conspiracy statutes is a maximum sentence of 20 years of incarceration. The fine is either $250,000 (for wire fraud), $500,000 (for money laundering), or twice the value of the monetary instruments or funds involved, whichever is greater.

12. The relevant portions of the statutes cited above and in the indictment are annexed to this affidavit as Exhibit C. Each of these statutes was duly enacted and in force at the time the offenses were committed and at the time the indictment was returned, and they remain in full force and effect. A violation of any of these statutes constitutes a felony under the laws of the United States.

13. I have also included as part of Exhibit C, the true and accurate text of 18 U.S.C. § 3282, which is the statute of limitations on prosecuting the crimes charged in this indictment. The statute of limitations requires that a defendant be formally charged within five years of the date that the offense or offenses were committed. Where this statute refers to "the information is instituted," it means that the filing of the Complaint and arrest warrant within the five-year period satisfies the statute of limitations. All of the charges against the OLOGEANU are well within the

prescribed five-year time period. Thus, the charges against OLOGEANU are not barred by the statute of limitations.

14. As of the transmission of this request, the United States does not believe that OLOGEANU faces charges for this conduct in Romania.

## SUMMARY OF THE CASE

15. In summary, OLOGEANU, along with fifteen other persons who have already been formally charged by indictment[1] for their participation in the same scheme, and others participated in a scheme to defraud victims in the United States by conducting an online auction fraud and money laundering operation through the Alexandria Online Auction Fraud ("AOAF") Network. The AOAF Network used online auction and retail websites like eBay and craigslist to post fake advertisements for luxury items, such as vehicles. The AOAF Network convinced victims to send money for the advertised goods by sending them persuasive communications, for example by impersonating a military member who needed to sell the advertised item before deployment or a person selling a vehicle on behalf of a deceased family member. The fraudsters also used invoices that contained counterfeit trademarks of the online auction or retail websites, like eBay and craigslist. These invoices would instruct the victim on how to pay for the item and give the victims a false sense of security by explaining the measures in place to show that the transaction was safe.

16. OLOGEANU conducted an online auction fraud scheme. He claimed he ran multiple European teams working in a "pyramide": 10 to 15 people posting, 5 to 8 people responding, 2 to 3 people working at a call center, and him overseeing the fraudulent operation.

---

[1] Unlike a complaint, an indictment is a formal charging document that alleges violations of the criminal laws of the United States. An indictment can only be issued by a federal grand jury, which is part of the judicial branch of the United States government.

6

He tasked each team of fraudsters with obtaining payments from victims using a particular payment platform. For example, one team would concentrate on Visa OneVanilla prepaid debit cards, while another focused on money orders. He explained he had to pay a significant portion of the money he earned to his workers.

17.     OLOGEANU then engaged in a money laundering conspiracy. He told victims to send funds in the form of bank wires, bank deposits, cashier's checks, money orders, prepaid gift or debit cards, and cash sent through the mail. If using prepaid gift or debit cards, OLOGEANU would retrieve the cards' codes from the victims, and send them to the American money launderers through online chat conversations or a Google Sheets spreadsheet. Other forms of payment would be provided directly to the American money launderers, at bank accounts, post office boxes, or other addresses provided by the American money launderers to OLOGEANU. Through a series of transactions, the American money launderers would redeem or receive the victim's method of payment, convert that to bitcoin, and send the bitcoin back to OLOGEANU to bitcoin addresses he provided.

18.     OLOGEANU used various means to convert his bitcoin into fiat currency, including through Bulgarian national, ROSSEN IOSSIFOV. Records from the email accounts of OLOGEANU and IOSSIFOV show the two communicating about the conversion of bitcoin into fiat currency.

19.     The fraud schemes, money laundering conspiracy, and the evidence against OLOGEANU are described in more detail in USSS Special Agent Mark J. Coleman's affidavit, which is attached as Exhibit D.

### IDENTIFICATION OF OLOGEANU AND HIS LOCATION

20.    BENIAMIN-FILIP OLOGEANU (CNP 1891212340439) is a white, male born on December 12, 1989, in Alexandria, Romania. He is known to reside at Str.Frigului nr.18 bl.1 et.7 ap.719, SPC. București S4 compart. nr.1. Prior to that, and as recent as August of 2017, he resided at Str.Dunării bl.L2 sc.D et.2 ap.52, Alexandria. Romanian authorities provided his photograph, attached as Exhibit E, which was taken around August 11, 2018. Other images in Exhibit E were obtained from the Facebook page belonging to Alexandra Costache, OLOGEANU's girlfriend (as further explained in Attachment D), received or sent by Costache on March 28, 2016, and December 10, 2017, as noted in Exhibit E.

## SURRENDER OF PROPERTY

21.    Pursuant to Article 25 of the Treaty, it is requested that any items relevant to the charged offenses found in OLOGEANU's possession at the time of his arrest be delivered to the United States, if the extradition is granted.

## CONCLUSION

22.    The complete list of exhibits attached hereto and incorporated by reference are set forth below:

| Exhibit A | Complaint against BENIAMIN-FILIP OLOGEANU, dated November 19, 2018 |
| Exhibit B | Warrant for the Arrest of BENIAMIN-FILIP OLOGEANU, dated November 19, 2018 |
| Exhibit C | Relevant Statutes |
| Exhibit D | Affidavit of Special Agent Mark J. Coleman |

23.    If Romanian authorities, or a Romanian court, believe that additional information is needed in support of this extradition request after the submission of this request, the United States (through the Department of Justice, Office of International Affairs) hereby requests, pursuant to Article 9 of the 2007 U.S. - Romania Extradition Treaty, that it be given notification

of any perceived deficiencies immediately, and that the United States be given an opportunity to supplement its request for extradition within a reasonable time period.

24. This affidavit and the affidavit of Special Agent Mark J. Coleman were sworn to before a Federal Magistrate Judge, who is legally authorized to administer an oath for this purpose. I have thoroughly reviewed this affidavit and the exhibits referenced herein and attest that this evidence indicates that OLOGEANU is guilty of the offenses charged in the indictment.

Kathryn M. Anderson
Assistant United States Attorney
United States Attorney's Office
Eastern District of Kentucky

Sworn and subscribed before me
this 26 day of November 2018.

United States Magistrate Judge

Exhibit A: Complaint against BENIAMIN-FILIP OLOGEANU
Approved November 19, 2018

Exhibit B: Warrant for the Arrest of BENIAMIN-FILIP OLOGEANU
Issued November 19, 2018

Exhibit C: Relevant Statutes

## Charged Statutes

### Title 18, United States Code, Section 1962(d): RICO Conspiracy

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

### Title 18, United States Code, Section 1349, Attempt and conspiracy

Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

### Title 18, United States Code, Section 1341, Mail Fraud

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the [United States] Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

### Title 18, United States Code, Section 1343, Fraud by wire, radio, or television

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

Title 18, United States Code, Section 1956(h), Conspiracy to Commit Money Laundering

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity [including mail and wire fraud] –
    (A)(i) with the intent to promote the carrying on of specified unlawful activity … or
    (B) knowing that the transaction is designed in whole or in part – (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified lawful activity
shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement

(a)(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States
    (A) With the intent to promote the carrying on of specified unlawful activity; or
    (B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part--(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity
shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer whichever is greater, or imprisonment for not more than twenty years, or both.

(h) Any person who conspires to commit any offense defined in this section . . . shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

Title 18, United States Code, Section 1028, Identity Theft

(a) Whoever, in a circumstance described in subsection (c) of this section-- . . .
    (7) knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law; or
    (8) knowingly traffics in false or actual authentication features for use in false identification documents, document-making implements, or means of identification;

shall be punished as provided in subsection (b) of this section.

(b) The punishment for an offense under subsection (a) of this section is--
    (1) except as provided in paragraphs (3) and (4), a fine under this title or imprisonment for not more than 15 years, or both, if the offense is-- . . .
        (D) an offense under paragraph (7) of such subsection that involves the transfer, possession, or use of 1 or more means of identification if, as a result of the offense, any individual committing the offense obtains anything of value aggregating $1,000 or more during any 1-year period;
    (2) except as provided in paragraphs (3) and (4), a fine under this title or imprisonment for not more than 5 years, or both, if the offense is--
        (A) any other production, transfer, or use of a means of identification, an identification document, authentication feature, or a false identification document; or
        (B) an offense under paragraph (3) or (7) of such subsection; . . .
    (5) in the case of any offense under subsection (a), forfeiture to the United States of any personal property used or intended to be used to commit the offense; and
    (6) a fine under this title or imprisonment for not more than one year, or both, in any other case.

(c) The circumstance referred to in subsection (a) of this section is that-- . . .
    (3) either--
        (A) the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce, including the transfer of a document by electronic means; or
        (B) the means of identification, identification document, false identification document, or document-making implement is transported in the mail in the course of the production, transfer, possession, or use prohibited by this section.

(d) In this section and section 1028A— . . .
    (7) the term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any--
        (A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number; . . .

(f) Attempt and conspiracy.--Any person who attempts or conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Title 18, United States Code, Section 1028A, Aggravated Identity Theft
    (a) Offenses –
        (1) In general. – Whoever, during and in relation to any felony violation

enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

Title 18, United States Code, Section 2320, Trafficking in Counterfeit Goods or Services

(a) Offenses.--Whoever intentionally--
    (1) traffics in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services,
or attempts or conspires to violate any of paragraph[] (1) . . . shall be punished as provided in subsection (b).

(b) Penalties.--
    (1) In general.--Whoever commits an offense under subsection (a)--
        (A) if an individual, shall be fined not more than $2,000,000 or imprisoned not more than 10 years, or both, and, if a person other than an individual, shall be fined not more than $5,000,000 . . . .

(f) Definitions.--For the purposes of this section--
    (1) the term "counterfeit mark" means--
        (A) a spurious mark--
            (i) that is used in connection with trafficking in any goods, services, labels, patches, stickers, wrappers, badges, emblems, medallions, charms, boxes, containers, cans, cases, hangtags, documentation, or packaging of any type or nature;
            (ii) that is identical with, or substantially indistinguishable from, a mark registered on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered;
            (iii) that is applied to or used in connection with the goods or services for which the mark is registered with the United States Patent and Trademark Office, or is applied to or consists of a label, patch, sticker, wrapper, badge, emblem, medallion, charm, box, container, can, case, hangtag, documentation, or packaging of any type or nature that is designed, marketed, or otherwise intended to be used on or in connection with the goods or services for which the mark is registered in the United States Patent and Trademark Office; and
            (iv) the use of which is likely to cause confusion, to cause mistake, or to deceive; . . .

16

## Other Relevant Statutes

Title 18, United States Code, Section 2: Principals

    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
    (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Title 18, United States Code, Section 3282, Offenses not capital

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found of the information is instituted within five years next after such offense shall have been committed.

Title 18, United States Code, Section 1963, RICO Penalties

(a) Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both, and shall forfeit to the United States, irrespective of any provision of State law—
    (1) any interest the person has acquired or maintained in violation of section 1962;
    (2) any--
        (A) interest in;
        (B) security of;
        (C) claim against; or
        (D) property or contractual right of any kind affording a source of influence over;

any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

    (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

The court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this section, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

Title 18 United States Code, Section 981, Civil forfeiture

(a)(1) The following property is subject to forfeiture to the United States:

(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to …any offense constituting "specified unlawful activity" [which includes wire fraud], or a conspiracy to commit such offense.

Title 18, United States Code, Section 982, Criminal Forfeiture
(a)(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956 … of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.
(2) The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate--
(A) section … 1341, 1343 … of this title, affecting a financial institution, or
(B) section . . . 1028 . . . of this title,
shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

Title 28, United States Code, Section 2461, Mode of Recovery

(c) If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case . . . .

Exhibit D: Affidavit of Special Agent Mark J. Coleman