UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON
5:19-cr-00010-JMH-MAS

UNITED STATES OF AMERICA                                              PLAINTIFF

v.

**DEFENDANT'S RESPONSE TO MOTION FOR CONSOLIDATION**

BENIAMIN-FILIP OLOGEANU                                               DEFENDANT

\* \* \* \* \* \*

Comes the Defendant, Beniamin-Filip Ologeanu ("Mr. Ologeanu" or "Defendant"), by and through counsel, and for his Response in Opposition to the United States of America's (hereinafter the "United States" or the "government") Motion for Consolidation ("Motion"), hereby states as follows:

**Introduction**

The United States moves this court to join the trials for *United States v. Stoica*, 5:18-CR-81-JMH ("*Stoica*") and *United States v. Ologeanu*, 5:19-CR-10-JMH ("*Ologeanu*"). Specifically, it seeks to join 12 *Stoica* defendants[1], charged by indictment on July 5, 2018, with four *Ologeanu* defendants, the latter group charged by superseding indictment over six months later than the former. At its core, the United States bases its argument for consolidation on two factors: (1) both sets of defendants could have been charged in a single indictment; and (2) presenting one case would save judicial resources. As provided in further detail below, the government's arguments for consolidation based on these factors lack merit.

---

[1] There are 15 defendants named in Indictment 18-81. The government's Motion seemingly concerns only 12 of them.

### I. The United States has failed to meet the requirements of Rule 8(b).

The government moves to consolidate pursuant to Federal Rule of Criminal Procedure 13. The determination of whether consolidation is appropriate under this Rule requires reference to Rule 8(b), "which provides that two or more defendants 'may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.'" *Daley v. United States*, 231 F.2d 123, 125 (1st Cir. 1956) (quoting Fed. R. Crim. P. 8(b)).

"Rule 8 requires a trial court to examine the allegations of the indictment in order to determine whether the joining of the offenses and/or defendants has been proper." *United States v. Frost*, 125 F.3d 346 (6th Cir. 1997) (citing *United States v. Lloyd*, 10 F.3d 1197, 1214 (6th Cir. 1993); *United States v. Holloway*, 971 F.2d 675, 679 (11th Cir. 1992)). In this regard, Rule 8(b) bears a much more stringent standard than Rule 8(a), and does not allow "joinder of offenses which are merely of 'the same or similar character.'" *Id.* (citing 1 CHARLES ALAN WRIGHT, FEDERAL PRACTIVE AND PROCEDURE: FEDERAL RULES OF CRIMINAL PROCEDURE § 143 p. 479, § 144 p. 494, § 144 495 (2d ed. 1982); *United States v. Eufrasio*, 935 F.2d 553, 570 n. 20 (3d Cir. 1991)). Therefore, as a matter of law, the United States may only succeed in its Motion based on the allegations made within the indictments. *See United States v. Hatcher*, 680 F.2d 438, 441 (6th Cir. 1982). The government must show through these specific pleadings that the relevant defendants "participated in the same act or transaction or in the same acts or series of transactions constituting an offenses or offenses." Fed. R. Crim. P. 8(b). It is "the counts of the indictment," rather than the introduction of extrinsic evidence, that must show the charges "arise[] out of the same or series of acts or transactions …." *Frost*, 125 F.3d at 389.

"The burden is on the government to show that persons to be joined participated in the same act or transactions, or in the same series of acts or transactions." *United States v. Whitehead*, 539 F.2d 1023, 1025 (4th Cir. 1976). The vagueness and distinguishing characteristics contained within the allegations within the "Means and Methods of the Enterprise," and "Overt Acts" contained in Count 1 of both indictments show the government has not met its burden. Specifically, the government has set out in said indictments the overt acts giving rise to the charges herein, which allege different over acts, performed by different defendants, at different times. *See* (18-81 DE # 1, para. 17) and (19-10 DE # 26, para. 26).

When comparing the two indictments, there is no allegation that the *Stoica* and *Ologeanu* defendants were associated or acquainted with each other. Rather, the United States claims that "[t]he *Stoica* and *Ologeanu* indictments charge that both sets of defendants participated in the Alexandria Online Auction Fraud Network as part of a RICO conspiracy," and as such "[t]he defendants could have been charged in a single indictment." (DE #105, p. 2). However, neither indictment references the other, and other than the government's assigned label of the alleged conspiracies, there is nothing alleged that would show the *Ologeanu* defendants participated in the same act or transaction, or the same series of acts or transactions, as the *Stoica* defendants. Therefore, this Court must deny the government's Motion as a matter of law.

Without common purpose in independent crimes of the same nature, these defendants cannot be joined in indictment under Rule 8, and therefore cannot be tried jointly on separate indictments under Rule 13. *See Whitehead*, 539 F.2d 1023. Paragraphs 1 through 5 of the indictments relating to an alleged criminal enterprise are nearly identical. However, the fact that both indictments allege a criminal enterprise alone is not enough to warrant consolidation; and, the fact that the government's Motion fails to demonstrate the alleged criminal conspiracies are

the same conspiracies is enough to show the requirements of Rule 8(b) have not been satisfied. As pleaded, the indictments allege that multiple defendants engaged in criminal conduct separately and without common purpose in independent crimes of the same nature.

The government's Confidential Source is not enough to meet its burden under Rule 8(b). Charges of multiple defendants with similar violations occurring on different dates has been held to be improper joinder. *See Ingram v. United States*, 272 F.2d 567, 570 (4th Cir. 1959) ("…defendants charged with unrelated offenses may not be indicted and tried together, and it is only where there is a connection among all defendants that the decision of the trial judge on motions for severance or for a new trial is not to be interfered with in the absence of an abuse of discretion."). In similar situations as *Ingram*, it has been held "that a defendant was improperly joined with a second defendant where the second defendant was also charged in the same indictment with additional crimes committed on different dates, and the first defendant was in no way involved with those additional crimes." *Whitehead*, 539 F.2d at 1025. (citing *King v. United States*, 355 F.2d 700 (1st Cir. 1966); *United States v. Bova*, 493 F.2d 33 (5th Cir. 1974); *McElroy v. United States*, 164 U.S. 76 (1896); *Cupo v. United States*, 359 F.2d 990 (D.C. Cir. 1966)).

Regardless of whether alleged independent crimes involved a common third party, such as the confidential source in this case, defendants who engage separately and without concert of purpose in independent crimes of the same nature may not be consolidated in an indictment under Rule 8(b) and cannot be consolidated for trial under Rule 13. *Whitehead*, 539 F.2d 1025. "Where the only nexus between two defendants joined for trial is their participation in similar offenses, on different dates, with common third defendant, the 'same transaction' or 'series of transactions' test of Rule 8(b) is not satisfied and joinder is impermissible." *Id.*

**II.     Even if the government meets its burden under Rule 8(b), consolidation would still be improper given the substantial risk of prejudice to Mr. Ologeanu.**

As an initial matter, this Court has the discretion under the Federal Rules to deny the government's Motion even where the government has met its burden under Rule 8(b). At this point, it is neither possible nor practical for defendants to determine how joinder would prejudice them given the voluminous amount of discovery in this case that has only recently been produced.[2] Nevertheless, commonsense strongly suggests that joining Mr. Ologeanu with 12 *Stoica* defendants will result in actual prejudice, as there is a severe risk that a joint trial will compromise specific trial rights and/or prevent the jury from making a reliable judgment about guilt or innocence.

The government states that it "would put on much of the same witnesses and evidence to prove the RICO conspiracy violations under both indictments." (DE # 105, p. 2). It is inevitable, based on the number of defendants and charges in these collective cases that the government will present other-crimes evidence, none of which involves Mr. Ologeanu.

Undoubtedly, Mr. Ologeanu, and the *Ologeanu* defendants for that matter, would be prejudiced by the introduction of 12 defendants in their trial. There is a clear and identifiable risk that the jury in this case would wrongfully consider evidence regarding a *Stoica* defendant against Mr. Ologeanu. Moreover, while discovery is still ongoing in this case, there is a reasonable likelihood that there will be irreconcilable defenses among 16 defendants in one trial, and this in itself supplies the prejudice needed in this circumstance to defeat the government's Motion. If the

---

[2] The United States only recently made available to defendants the "Second Phase" of discovery. In fact, the discovery in these cases is so vast that this Court has appointed a Coordinated Discovery Attorney ("CDA") to assist defendants and counsel in their review of the government's disclosures. Per letter dated April 30, 2019, the United States notified counsel that a copy of this production was sent to the CDA the same date. It was not until May 13, 2019, three days before the United States filed its Motion for Consolidation, that the CDA forwarded this defendant the second production of universal discovery from the CDA.

government's Motion is granted, a jury would be prevented from making a reliable judgment about Mr. Ologeanu's innocence.

Even where there is not necessarily a finding of undue prejudice resulting from joinder, severance has also been found to be required by the physical limitations of the courthouse and the logistical difficulties of attempting to conduct a complex multi-defendant trial. *See United States v. Gray*, 173 F. Supp. 2d 1 (D.D.C. 2001). This logic derives "from the number of defendants and the number of counts, the complexity of the indictment, estimated length of the trial, disparities in the amount or type of proof offered against the defendants, disparities in the degrees of involvement by defendants in the overall scheme, possible conflict between various defense theories or trial strategies; and, especially, prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant." *United States v. Gallo*, 668 F.Supp. 736, 749 (E.D.N.Y. 1987).

In *United States v. Gallo*, "[a]fter weighing the potential prejudice against defendants, the court decided that the dispositive factor counseling severance was judicial efficiency." *Gray*, 173 F. Supp. 2d at *8 (citing *Gallo* at 753). Similarly, the factors relied upon in *Gallo* were relied on in *Gray*. These factors weighing against a finding that consolidation supports judicial economy include the hardship on the administrative structure of the Court; the "enormous task" of coordinating assorted personnel who must be involved on a daily basis with the trial; the hardship on jurors who must leave the normal routines of life for extended periods of time; the hardship on defendants who may be unable to find counsel to represent them for such extended periods of time; and the "'grinding tension' of prolonged criminal trials" that the trial judge must bear to "put his entire docket virtually on hold" for the extent of the trial. *Id.* Here, just as in *Gray*, where all defendants are indicted in a RICO conspiracy, the government's case is complex enough to warrant

severance were these cases to be consolidated, and therefore also complex enough to overcome the government's Motion for Consolidation.

**Conclusion**

In this case, consolidation is not warranted. The United States has failed to show in its Motion for Consolidation that the requirements for joinder are met or that all of the defendants could have been charged in the same indictment. Additionally, Mr. Ologeanu would be substantially prejudiced by the introduction of the *Stoica* defendants in his trial. Lastly, the consolidation of these case would not support judicial economy. For these reasons, the government's Motion must be denied.

    Respectfully submitted,

    MCBRAYER PLLC
    201 E. Main Street, Suite 900
    Lexington, KY  40507
    (859) 231-8780
    dguarniri@mcbrayerfirm.com
    tnichols@mcbrayerfirm.com

    *Trevor M. Nichols*
    DAVID J. GUARNIERI
    TREVOR M. NICHOLS
    ATTORNEYS FOR DEFENDANT

Certificate of Service

On May 24, 2019, I electronically filed this motion through the ECF system, which will send the notice of electronic fling to:

Kate Anderson
Assistant United States Attorney

Dan Carman
Counsel for ANDREI-CĂTĂLIN STOICA

Thomas Lyons
Counsel for LIVIU-SORIN NEDELCU

Mark Wohlander
Counsel for MARIUS-DORIN CERNAT

Patrick F. Nash
Counsel for ŞTEFAN-ALEXANDRU PĂIUŞI

Fred E. Peters
Counsel for EUGEN-ALIN BADEA

Patrick Renn
Counsel for BOGDAN-ŞTEFAN POPESCU

Pamela D. Perlman
Counsel for ALIN-IONUŢ DOBRICĂ

Jeffrey A. Darling
Counsel for FLORIN ARVAT

C. William Swinford
Counsel for ALEXANDRU ION

Robert C. Webb
Counsel for VLAD-CALIN NISTOR

Elizabeth Snow Hughes
Counsel for ROSSEN IOSSIFOV

Derek Gordon
Counsel for AUSTIN NEDVED

James O'Toole
Counsel for DIMITRIOUS BROWN

J. Clark Baird
Counsel for ANDREW YBARRA, II

                                       */s/ Trevor M. Nichols*
                                       TREVOR M. NICHOLS
                                       DAVID J. GUARNIERI
                                       Counsel for Defendant